Case 4:24-cv-00796   Document 17-1   Filed on 06/28/24 in TXSD   Page 1 of 18

2/28/2024 7:32 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 85027599
By: Gerardo Perez
Filed: 2/28/2024 7:32 PM

2024-12963 / Court: 133

CAUSE NO. _____

| | | |
|---|---|---|
| PRCHOU LLC, D/B/A PREMIER REGIONAL CONSTRUCTION HOUSTON, § § § | § | IN THE DISTRICT COURT OF |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY | § § | |
| *Defendants.* | § | \_\_\_\_ JUDICIAL DISTRICT |

**PLAINTIFF'S VERIFIED ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff PRCHOU LLC, D/B/A Premier Regional Construction Houston ("PRC"), brings this lawsuit complaining of Metropolitan Transit Authority of Harris County ("METRO") ONLY for Breach of Contract under TEX. LOC. GOV'T CODE ANN. § 271.

**I.
DISCOVERY LEVEL**

1.   Pursuant to Rule 190 of Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under a Level 2 Discovery Control Plan as defined in Rule 190.3.

**II.
PURSUANT TO RULE 47 OF TEX. R. CIV. P.**

2.   Plaintiff seeks monetary relief over $1,000,000 and injunctive relief. Furthermore, Plaintiff demands for Judgment for all other reliefs to which Plaintiff is justly entitled.

**III.
JURISDICTION AND VENUE**

3.   This Honorable Court has jurisdiction because METRO's governmental immunity from liability and immunity from suit have been waived.

4.      Governmental immunity encompasses two principles: (1) immunity from suit (barring a lawsuit unless the legislature expressly gives its consent to suit) and (2) immunity from liability. *Travis County v. Pelzel & Assocs.*, 77 S.W.3d 246, 248 (Tex. 2002).

5.      First, when a governmental entity contracts with a private party, as METRO has done here, it is liable in its contracts as if it were a private party. *See Gen. Servs. Comm n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). It is undisputed that METRO executed a written contract for services at issue in this case with Plaintiff. Thus METRO has waived its governmental immunity to liability. TEX. LOC. GOV'T CODE ANN. § 271.151.

6.      Secondly, pursuant to Section 271.152 of the Tex. Loc. Gov't Code Ann, METRO also waived immunity to suit. This section provides:

> A local government entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity **to suit** for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152. *See* Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 3, 2005 Tex. Gen. Laws 1548, 1549 (September 1, 2005 effective date), *reprinted* following TEX. LOC. GOV'T CODE ANN. § 271.152.

7.      Specifically, METRO is a local governmental entity; it is authorized to enter into the contract at issue, which has the essential terms of the agreement for providing services to the local governmental entity that is properly executed on behalf of the local governmental entity; and it is in fact entered into a written contract subject to the subchapter.

8.      In addition, the damages for which Plaintiff brings suit exceed the minimum jurisdictional limits of the Court.

9.      Venue is proper in Harris County, Texas, as Defendant METRO maintains its principal offices in Harris County, under Texas Local Government Code, Section 271.152-153.

Page 2 of 18

## IV.
## INTRODUCTION

10. Ms. Mukadas D. Kurban is a hardworking businesswoman, a dutiful wife of a reputable oncologist in the Texas Medical Center, and a loving, caring mother of two wonderful young ladies, who look up to her not only as a role model, but a determined woman who has never allowed herself to be bullied—especially in the business arena. Most importantly, Ms. Kurban is a proud U.S. citizen who loves this country with all her heart and soul.

11. Ms. Kurban founded, owned, and operated the Houston construction company, PRCHOU LLC, which has provided services for METRO since 2019 with three successful million-dollar contracts, listed in PRC's History on page 4.

12. In 2022, Ms. Kurban's company, PRC, was awarded a service contract with METRO. Unfortunately, METRO blatantly breached its contract. Why? Because they wanted to terminate the contract to give it to a different contractor, Total Contracting Limited, their "pre-arranged bidder." Shortly after the Contract was wrongfully terminated on May 5, 2023, METRO did not bother to respond although PRC requested in writing to appeal the termination decision on May 8, May 15, June 16, and June 29 of 2023.

13. METRO purportedly pretended to advertise for bids for this project on June 21, 2023. On September 21, 2023, METRO subsequently awarded it to their "pre-arranged bidder," Total Contracting Limited, for $16,492,788.35.

14. To bring down PRC after making complaints to METRO, METRO delayed and failed to pay PRC for **(1)** the balance due and owed for work done by PRC under the contract (as it was amended), including the amount owed as compensation for the increased cost to perform the work as a direct result of METRO's delays or acceleration; **(2)** the amount owed for change orders and additional work the contractor is directed to perform by METRO in connection with

the contract; and interest and the **(c)** actual damages suffered by Plaintiff.[1] After many attempts requesting to resolve the dispute with METRO and the other Defendants failed, Ms. Kurban decided to fight against the bureaucratic municipal system. Her resilience has made all Houston businesswomen proud!

## V.
## REQUEST FOR DISCLOSURE

15. Pursuant to Rule 194.2 of the Texas Rules of Civil Procedure (effective since 2021), Plaintiff requests that Defendants disclose, within thirty (30) days after METRO files its Answer, the information and material described in Rule 194.2 of the Texas Rules of Civil Procedure.

## VI.
## PARTIES

16. PRCHOU LLC, D/B/A Premier Regional Construction Houston ("PRC"), is a Houston company existing under the laws of the State of Texas with its principal place of business in Houston, Harris County, Texas.

17. Defendant Metropolitan Transit Authority of Harris County ("METRO") is a government entity and may be served with citation by serving its President and Chief Executive Officer, or authorized Official at 1900 Main Street, 3rd Floor, Houston, Texas 77002.

---

[1] Tex. Loc. Gov't Code Ann § 271.153 - Limitations on Adjudication Awards provides: (a) Except as provided by Subsection (c), the total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;(3) reasonable and necessary attorney's fees that are equitable and just; and (4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.(c) Actual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by Section 271.151(2)(B).Tex. Loc. Gov't. Code § 271.153. Amended by Acts 2013, 83rd Leg. - Regular Session, ch. 1138,Sec. 3, eff. 6/14/2013.Amended By Acts 2011, 82nd Leg., R.S., Ch. 226, Sec. 1, eff. 9/1/2011.Amended By Acts 2009, 81st Leg., R.S., Ch. 1266, Sec. 8, eff. 6/19/2009.Added by Acts 2005, 79th Leg., Ch. 604, Sec. 1, eff. 9/1/2005.

# VII.
## THE SUCCESSFUL HISTORY OF THE PRIOR CONTRACTUAL RELATIONSHIP BETWEEN METRO AND PRC

18. Since 2019, PRC was awarded and successfully completed three METRO construction contracts, each worth over $1 million to $2 million:

1. Construction of Bike Path And Sidewalk (Improvements) Along Red Line (2019).
METRO Contract No. 7319000092. Contract amount: $2,252,902.50: Completed Successfully because there was no Gary Lehman in the picture.

2. Leeland Bike Lane Construction (2020).
METRO Contract No. 7020000054. Contract amount: $1,413,818.06: Completed Successfully because there was no Gary Lehman in the picture.

3. Traffic Signal Mast Arms Upgrade, 12 Downtown Locations (2021).
METRO Contract No. 7021000058. Contract amount: $1,392,352.00: Completed Successfully because there was no Gary Lehman in the picture.

(PRC finished this Project far ahead of schedule for less than the contract amount.)

# VIII.
## TIMELINE AND EVENTS OF THE PROJECT

**A. CHRONOLOGY.**

19. In 2022, METRO hosted a public bid for a new project known as 56 BOOST. After bidding $11.5 million, PRC was given written notice of contract award from METRO for the job. (**Exhibit 1**: METRO Contract with Plaintiff with specific terms - No. 7022000111 - 56 Airline/Montrose BOOST Construction Contract). METRO issued a separate Notice to Proceed (NTP) Letter that requested the work be finished within 24 months from the effective date noted in the NTP.

April 7, 2022:       PRC received notice of contract award from METRO.

May 19, 2022:       PRC received the first Work Authorization for services for Segment #2 of Route 56 - between Cavalcade and Tidwell. Without the City of Houston having an approved set of plans, per contract, PRC could not obtain Permits. This factual evidence shows that the Procurement Department

Page 5 of 18

|  |  |
|---|---|
|  | OEBO is a mess, and obstructed the project work due to METRO mismanagement. |
| May 23, 2022: | After a month and 16 days, Notice to Proceed was issued by METRO, causing delay damages to PRC. |
| June 1, 2022: | PRC received the second Work Authorization for services for Segment #3. |
| August 4, 2022: | After delivering the bond document, PRC was informed by Michael Diettel and Michael Kyme, who is the METRO Contract Officer for this specific job, that the document was lost while in the possession of the Procurement Department. The document was then found the following day. (This factual evidence again demonstrates one of many instances in which the METRO has shown irresponsible mismanagement and lack of professionalism when working with PRC.) |
| September 15, 2022: | PRC filed a formal complaint against both Philip Cavazos, METRO Project Manager, and Gary Lehman who worked for Third-Party Arcadis (both of whom are Project Managers ("PMs") for the project). |
|  | METRO then breached the contract. |
| September 27, 2022: | PRC submitted the P6 schedule (Payment Application 6) to METRO. |
| October 19, 2022: | PRC submitted the same P6 schedule to METRO via its agent Gary Lehman of Arcadis again. |
|  | *[At this point, despite METRO's nonpayment, PRC continued to fulfill its side of the contract agreement by continuing work on the job site.]* |
| December 7, 2022: | Around this time, there were many dangerous incidents concerning the safety of PRC's workers. Due to the location of the job site, workers were subjected to theft, threats, and intimidation by criminals in the area and harassed by strangers with machetes. PRC informed METRO numerous times regarding these incidents and requested police protection to aid the workers' safety. However, METRO proceeded to ignore these claims and did not respond to the requests made by PRC. |
|  | [PRC continued working in good faith on the job site to complete the project.] |
| January, 2023: | PRC did not receive the full payment amount that was promised by METRO for Payment Application 6 (which was submitted in January of 2023, but was not paid in full). |

Page **6** of **18**

| | |
|---|---|
| February, 2023: | PRC also did not receive the full payment amount that was promised by METRO for Payment Application 7 (that was submitted in February of 2023, but was not paid in full). |
| | [PRC finished the work in March and was owed and underpaid.] |
| February 20, 2023: | The original awarded contract with METRO was for $11.5M. However, PRC repeatedly requested a 20% increase due to COVID-19, inflation, and multiple supply chain issues. These requests were acknowledged by METRO. |
| April 5, 2023: | PRC submitted two separate Payment Application invoices in the amount of $202,126.25 due and owed for Segment 2 and Segment 3 to METRO; however, PRC was not paid for either of them. |
| | [During April of 2023, PRC continued to work even though they did not receive payment for the two invoices.] |
| April 27, 2023: | **PRC was granted extensions of both Work Authorizations to complete both Segments 2 and 3 by December 31, 2023.** |
| April 28, 2023: | *See* METRO's Email attached to PRC's May 15 Response. |
| April 29, 2023: | *See* PRC's Email Reply to METRO. |
| May 1, 2023: | *See* Danielle Smith's Email from METRO at 1:55 p.m. |
| May 1, 2023: | *See* PRC's Email Reply to METRO at 2:04 p.m. |
| **May 5, 2023:** | PRC again submitted two more separate Payment Application invoices owed and due for Segment 2 and Segment 3 to METRO. However, once again, PRC was not paid for either of them [making a total of four unpaid invoices of **$50,884.38; $54,219.21; $70,436.26 and $22,411.19** respectively]. |
| | At this point in the project, as a small and minority business, PRC exhausted all of its resources, its line of credit, and company cash flow to support the project. After many attempts to receive payments for the work that was done, PRC notified METRO that if METRO did not pay the outstanding invoices, PRC would have no choice but to pause the project. |
| | METRO's nonpayment forced PRC to pause the project at the beginning of May of 2023. PRC then repeatedly requested multiple meetings with the METRO Procurement Department to address the four invoices that were not paid. |

|  |  |
|---|---|
|  | Furthermore, PRC underwent significant hardship during this time, including having heavy machinery being stolen (loss of $168,000.00), 12 break-ins (which were reported to the Houston Police Department and the Metro Project Manager), the theft of working tools (loss of $24,000.00), 16 different replacements for the front and back windows of the workers' cars as a result of ongoing theft, and two electronic arrow boards that were shot down at the job site (loss of $11,800.00). The total amount for these actual damages is $203,800.00. |
| May 5, 2023: | Without warning, METRO Small Business and Procurement wrongfully sent PRC an Email at 2:58 p.m. giving the Notice of Termination – Contract No. 7022000111 – Boost 56 Airline/Montrose.  (*See* **Exhibit 2**.)<br><br>The Allegations made by METRO were false.<br><br>*This was a shock for PRC, because PRC did not have any say in this matter. Instead of communicating with PRC to resolve the dispute, METRO abruptly terminated the contract. Instead of resolving this issue, the termination was decided one-sidedly.  METRO also made false claims in the letter, without giving PRC the opportunity to address and correct the errors all made by METRO that were not PRC's fault.* |
| May 8, 2023: | PRC sent METRO its first response, offering mutual resolution, citing the week of May 8-12 as a complete "weather week due to heavy rainfall expected" and requesting payment so PRC can complete Segment 2 and 3. In the May 8, 2023 response, PRC stated as follows:<br><br>*"If payment is made, PRC can continue traffic control and site work for as soon May 15, 2023. The week of May 8-12 <u>is a complete weather week due to heavy rainfall expected.</u> If it is the mission for METRO Small Business to support certified Small Business, we ask METRO Small Business to reconsider its decision given (without a proper due and appeals process afforded) to an SBE/DBE firm and allow us to complete Segment 2 and 3."*  (*See* **Exhibit 3**: PRC's May 8, 2023 Response offering Resolution.) |
| May 15, 2023: | PRC sent its response and Appeal Request to the METRO Contract Disputes Appeals Committee, Contract Officer Michael Diettel, but again never received any response from these persons or the Contract Disputes Appeals Committee of METRO. (*See* **Exhibit 4**: PRC's May 15, 2023 Response and request for Appeal.)<br><br>*PRC continued to request an appeal of the decision pursuant to the contract, and was met with no response from METRO or urgency to the claim. Unfortunately, the company suffered multiple losses in terms of* |

*termination of numerous employees and ultimately being forced to close down the company. The irresponsible actions on METRO's part have severely affected all parties involved.*

| | |
|---|---|
| June 16, 2023: | PRC sent a formal letter to Michael Diettel, Contracting Officer, but again METRO never responded. Sections 9, 35, and 36 of the contract were violated in refusing to give PRC opportunity to dispute METRO's stated grounds for termination, not providing evidence in support thereof, and refusing to give PRC an evidentiary hearing to present its case in accordance with Section IX, Paragraph 9 of the Contract. |
| June 21, 2023: | **METRO purportedly advertised this project and on September 21, 2023, subsequently awarded it for $16,492,788.35 to a different contractor, Total Contracting Limited, their "pre-arranged bidder."** |
| June 29, 2023: | PRC sent another formal letter to Michael Diettel, Contracting Officer, including an Email sent at 4:57 p.m. to Michael Diettel and Charles Holmes at METRO requesting an appeal. METRO did not respond. |

To this day, PRC still has not received a response from METRO regarding the appeals it submitted on May 8, May 15, June 16, and June 29, 2023. However, METRO did make a demand of performance upon PRC's surety without providing PRC the required appeal. This caused additional damages to PRC. **(***See* **Exhibit 5** including the correspondence below.**)**

20.  ***TO THIS DAY, METRO HAS REMAINED SILENT.***

**B. On June 29, 2023, Connor Best of Munsch Hardt Law Firm, Attorney for PRC, sent a Letter demanding an appeal to Michael Diettel, METRO Contract Disputes Appeals Committee, but METRO did not answer.**

Re: PRCHOU, LLC's Appeal pursuant to Section IX(9) of METRO'S Termination of Contract No. 7022000111 BOOST 54 AIRLINE/MONTROSE

June 29, 2023

Via Certified Mail/RRR 9314769904300109537664
and Email (Michael.Diettel@ridemetro.org)

METRO Contract Disputes Appeals Committee
c/o Michael Diettel Contracting Officer
1900 Main Street
Houston, Texas 77002

Re: PRCHOU, LLC's Appeal pursuant to Section IX(9) of METRO'S Termination of Contract No. 7022000111 BOOST 54 AIRLINE/MONTROSE

Dear Mr. Diettel:

*I am writing this letter in accordance with my previous letter, dated June 16, 2023, to which I have not received any response. Per my previous letter, PRC disputes METRO's termination of the Contract, and submitted two responses appealing METRO's termination of the Contract and requesting a hearing to contest the termination on May 8, 2023 and May 15, 2023. In its appeal to the METRO Contract Disputes Appeals Committee on May 15, 2023. PRC disputed METRO's stated grounds for termination, provided evidence in support thereof, and requested an evidentiary hearing to present its case in accordance with Section IX, Paragraph 9 of the Contract.*

*PRC still has not received any response from METRO regarding the appeals it submitted in May, nor its June 16, 2023 letter requesting METRO comply with its Contract. METRO's failure to provide an appeal is a breach of the Contract and waives ay requirement of PRC to submit to the evidentiary hearing. Furthermore, METRO's wrongful demands of performance to PRC's surety without providing PRC the required appeal may cause damages to PRC for which METRO will be liable and constitutes a failure to mitigate damages by METRO. Please confirm in writing that METRO will be providing an evidentiary hearing, as required by the Contract, by July 5, 2023.*

*By the copy below, I am providing a copy of this correspondence to the performance bond surety on the project at issue, Travelers Casualty and Surety Company of America.*

*PRC reserves all rights and remedies granted to it pursuant to the Contract, at law and equity, and the requests contained in this letter shall not be construed as a waiver of any of PRC's rights and/or remedies. In addition, METRO's wrongful termination and breach of the Contract has caused PRC to incur damages and attorney's fees, which are recoverable pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.*

*Furthermore, PRC requests METRO preserve and retain all documents, electronically stored information (ESI), and physical evidence related to the Contract, in accordance with Texas and Federal law.*

Page **10** of **18**

*I look forward to hearing from you.*

*Regards,*

Connor Best
Attorney at Law

cc: Charles Holmes
Supervisor, Contracts Specialist
Metropolitan Transit Authority of Harris County
1900 Main Street
Houston, TX 77002
Charles.Holmes@ridemetro.org

Travelers Casualty and Surety Company of America c/o
Elizabeth Roman
EJROMAN@travelers.com"

21. **To this day, METRO remains silent; thus, litigation has ensued.**

## IX.
## BREACH OF CONTRACT CLAIM AGAINST METRO

22. Based on the above facts, METRO breached the contract that it had with PRC; and METRO failed to keep and fulfill the promises that formed all or part of the agreement with PRC. METRO breached the contract with Plaintiff by failing to pay the amount due and owed for work that Plaintiff had performed so that Plaintiff could continue completing the job.

23. METRO further breached the contract by violating Sections 9, 35, 36, and many other sections, in refusing to allow PRC to dispute METRO's stated grounds for termination, providing evidence in support thereof, and refusing to give PRC an evidentiary hearing to present its case in accordance with Section IX, Paragraph 9 of the Contract.

24. To this day, PRC still has not received any response from METRO regarding the appeals that it submitted on May 8, May 15, June 16, and June 29, 2023, requesting METRO comply with its Contract. METRO's failure to provide an appeal is a breach of the Contract in itself and waives any requirement of PRC to submit to the evidentiary hearing. Furthermore,

METRO's wrongful demands of performance to PRC's surety without providing PRC the required appeal may cause damages to PRC for which METRO will be liable and constitutes a failure to mitigate damages by METRO.

## X.
## SPECIFIC PERFORMANCE

25. In the alternative, Section 271.153(c) provides: Actual damages, **specific performance**, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by Section 271.151(2)(B).

26. The petition and application for specific performance should demonstrate that:

   (1) There was an enforceable contract;

   (2) Plaintiff tendered performance, or tendered performance was excused by Defendant's breach or repudiation of the contract;

   (3) Defendant repudiated the contract, breached the contract, or otherwise failed to perform Defendant's obligations under the contract; and

   (4) Plaintiff is ready, willing, and able to perform at the time the contract was to have closed.

27. In the instant case, there was an enforceable contract, PRC tendered performance, or tendered performance was excused by METRO's breach or repudiation of the contract; and METRO's repudiated the contract, breached the contract, or otherwise failed to perform.

28. As such, PRC is seeking Specific Performance and requesting the Court to hold an emergency hearing ordering METRO to perform its obligations under Sections 9 and 35.

## XI.
## REQUEST FOR EMERGENCY HEARING FOR SPECIFIC PERFORMANCE.

29. PRC respectfully requests the Court to grant it an emergency hearing for specific performance.

## XII.
## DAMAGES AGAINST METRO

30. As a direct and proximate result of Defendants' breaches, Plaintiffs suffered unliquidated damages that fall within the jurisdictional limits of this Court.

31. Pursuant to Section 271.153 (a) and the rulings of the Texas Supreme Court, Plaintiff respectfully requests the following damages to be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiff.

32. Section 271.153 provides:

(a) Except as provided by Subsection (c), the total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:

    (1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed of owner-caused delays or acceleration;
    (2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;
    (3) reasonable and necessary attorney's fees that are equitable and just; and
    (4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.
*****
(c) Actual damages, **specific performance**, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by Section 271.151(2)(B).

33. "Section 271.153 does not add immunity that Section 271.152 takes away; Section 271.152 uses Section 271.153 to further define to what extent immunity has been waived." *Zachry Const. Corp. v. Port of Houston Auth. of Harris County,* 449 S.W.3d 98, 106 and 114 (Tex. 2014).

34. "Under Section 271.153(a)(1), the 'amount of money awarded . . . for breach of contract' includes 'the balance due and owed . . . under the contract' as amended, 'including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays." *Port of Houston Auth. of Harris County*, 449 S.W.3d at 114. The Texas Supreme Court further held: "If so, as we conclude, the second part of the immunity issue is whether the delay damages Zachry seeks are permitted by the Act, so that the Port's immunity from suit is waived. We conclude they are." *Id.*

35. According to the Texas Supreme Court,[2] the phrase, "balance due and owed/owing" is not defined in the Act, and the Legislature has not used it except in three other statutes waiving governmental immunity, where it is also undefined: the State Contract Claims Act[3], the County Contract Claims Act,[4] and the State Agency Contract Claims Act.[5] The Texas

---

[2] *Zachry Const. Corp. v. Port of Houston Auth. of Harris County,* 449 S.W.3d 98, 106 and 114 (Tex. 2014).

[3] The Supreme Court included and discussed TEX. GOV 'T CODE § 2260.003(a). This Code stated:  ("The total amount of money recoverable on a claim for breach of contract under this chapter may not . . . exceed an amount equal to the sum of: (1) *the balance due and owing on the contract price*; (2) *the amount or fair market value of orders or requests for additional work made by a unit of state government to the extent that the orders or requests for additional work were actually performed*; and (3) *any delay or labor-related expense incurred by the contractor as a result of an action of or a failure to act by the unit of state government or a party acting under the supervision or control of the unit of state government.*").

[4] The Supreme Court included and discussed TEX. LOC. GOV'T CODE § 262.007(b). This Code provides: ("The total amount of money recoverable from a county on a claim for breach of the contract is limited to the following: (1) the balance due and owed by the county under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration; (2) the amount owed for change orders or additional work required to carry out the contract; (3) reasonable and necessary attorney's fees that are equitable and just; and (4) interest as allowed by law.").

[5] The Supreme Court included and discussed TEX. CIV. PRAC. & REM. CODE § 114.004(a). This Code provides: ("The total amount of money awarded in an adjudication brought against a state agency for breach of an express provision of a contract subject to this chapter is limited to the following:(1) the balance due and owed by the state agency under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration if the contract expressly provides for that compensation; (2) the amount owed for written change orders; (3) reasonable and necessary attorney's fees based on an hourly rate that are equitable and just if the contract expressly provides that recovery of attorney's fees is available to all parties to the contract; and (4) interest at the rate specified by the contract or, if a rate is not specified, the rate for postjudgment interest under Section 304.003(c), Finance Code, but not to exceed 10 percent.").

Supreme Court further held that the word *"due" simply means "owing or payable" and "owing" means "unpaid."* [6]

36. The Court further held that a "balance due and owed . . . under the contract" is simply *the amount of damages for breach of contract payable and unpaid.* The Court further held that direct damages for breach is "the necessary and usual result of the defendant's wrongful act." **and that were "contemplated at the time [the parties] made the contract that such damages would be a probable result of the breach."**

37. Furthermore, Section 271.153(a)(1) also allows the inclusion of "any amount owed as compensation for . . . owner-caused delays." [7]

38. The Court clearly said in this landmark decision: "While the Legislature clearly intended to limit the recovery of consequential damages on contract claims permitted by the Act,[8] nothing in the Act suggests that the Legislature intended to create a unique and somehow limited standard for measuring direct damages for breach of contract. Generally, a contractor has a right to delay damages for breach of contract. The parties are free to modify or exclude it by agreement, but unless they do, the right provided by law is as much a part of the contract as the rights the contract expressly creates." *Zachry Const. Corp. v. Port of Houston Auth. of Harris County,* 449 S.W.3d 98, 106 and 114 (Tex. 2014).

---

[6] *See* Black's Law Dictionary 609 (10th Ed. 2014).

[7] *Housing Auth. of Dallas v. Hubbell*, 325 S.W.2d 880, 884-885, 890-891 (Tex. Civ. App.—Dallas 1959, writ ref'd n.r.e.) (holding NO DELAY DAMAGES clause did not bar delay damages found to have been caused by owner arbitrarily and capriciously—defined as "willful and unreasoning action without due consideration and in disregard of the facts, circumstances, and the rights of other parties involved"—even though NO DELAY DAMAGES clause barred delay damages "from any cause"); *U.S. ex rel. Wallace v. Flintco*, 143 F.3d 955, 964-965 (5th Cir. 1998) (holding NO DELAY DAMAGES clause did not preclude recovery of delay damages caused by owner's active interference with the contractor's performance, without considering impact of NDFD language); *see generally* P. V. Smith, Annotation, *Right of Building or Construction Contractor to Recover Damages Resulting from Delay Caused by Default of Contractor*, 115 A.L.R. 65 (1938).

[8] "Consequential damages are those damages that result naturally, from the defendant's wrongful acts." *Basic Capital Mgmt. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 901 (Tex. 2011); *El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 144 (Tex. 2012). Delay damages are consequential damages.

39. As such, Plaintiff seeks damages against METRO for:

   a. Actual damages including the amount due and owed under contract, delay damages; specifically, all damages allowed under Section 271.153 and by the Texas Supreme Court interpreting Section 271.153.[9]

   b. Specifically, all damages due to Defendants' delays and nonpayment in performance of the contract; due to METRO's breach.

   "We hold that Zachry's claim for delay damages is not barred by immunity or by the no-damages-for-delay provision of the contract." (*Port of Houston Authority* of Harris County, Texas, 449 S.W.3d 98, at 106 and 114.)

   c. All damage resulted from the changing of orders.

   d. All reasonable expenses incurred by Plaintiff, including court costs and reasonable and necessary Attorney's fees; and

   e. Pre-judgment and post-judgment interest.

40. As to Herman Gary Lehman IV and Arcadis, Pierre Merhi, and Total Contracting Limited, Plaintiff seek damages for actual damages and exemplary damages which are two times the actual damages.

41. The Defendants are jointly and severally liable for the actual damages.

### XIII.
### ATTORNEY'S FEES

42. Plaintiff is entitled to recover reasonable and necessary Attorney's fees under Texas Civil Practice & Rem. Code, Section 38.001, and under Sections 271.153(a)(3). It was necessary for Plaintiff to hire the undersigned Attorneys to file this lawsuit. Upon judgment, Plaintiff respectfully requests an award of Attorney's fees and costs.

---

[9] *Zachry Const. Corp. v. Port of Houston Auth. of Harris County,* 449 S.W.3d 98, 106 and 114 (Tex. 2014).

## XIV.
## JURY DEMAND

43.     Plaintiff demands a Trial by Jury and submits the appropriate fee.

## XV.
## CONDITIONS PRECEDENT

44.     All conditions precedent has been performed or have occurred as required by Texas Rule of Civil Procedure 54.

## PRAYER

45.     For the above reasons, Plaintiff prays for judgment against Defendants, with interest on the judgment at the legal rate, pre-judgment interest, costs of court, and for such other further relief, both in law and equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**The Kelley Law Firm**
**By:** */s/ Lloyd E. Kelley*
**Lloyd E. Kelley**
Texas Bar No. 11203180
kelley@lloydekelley.com
2726 Bissonnet, Suite 240, PMB 12
Houston, Texas 77005
(281) 492-7766 (main)
(281) 652-5973 (fax)
**LEAD COUNSEL FOR PLAINTIFF**

**CAGLE & ASSOCIATES**
By: */s/ R. Jack Cagle*
**R. JACK CAGLE**
**State Bar No. 03591850**
The Texas Justice Center
4900 Fournace Place, Suite #200
Bellaire, Texas 77401
(713) 927-0720 Telephone
**CO-COUNSEL FOR PLAINTIFF**

THE TAMMY TRAN LAW FIRM
By: */s/ Minh-Tam Tran*
**MINH-TAM TRAN**
Texas State Bar No. 20186400
ttran@tt-lawfirm.com
4900 Fournace Place, 4th Floor
Bellaire, Texas 77401
Telephone: (832) 372-4403
**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

## VERIFICATION

**STATE OF TEXAS** §
**COUNTY OF HARRIS** §

Before me, a notary public, on this day, personally appeared **Mukadas D. Kurban**, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct and within personal knowledge.

_____
Mukadas D. Kurban

**SWORN TO AND SUBSCRIBED BEFORE ME**, the undersigned authority, on the 28th day of February 2024, to certify which witness my hand and seal of office.

VINH-HUY VINCENT LAM
Notary ID #133396323
My Commission Expires
October 15, 2025

**NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS**

Unofficial Copy Office of Marilyn Burgess District Clerk