IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND | § | |
| SURETY COMPANY OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 24-796 |
| | § | |
| PRCHOU, LLC; MUKADAS D. KURBAN; | § | |
| APAR PATAER; ABDUL R. DAWOOD; | § | |
| and MARIA E. DAWOOD | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES PURSUANT TO RULE 12(F) AND BRIEF IN SUPPORT

Plaintiff, Travelers Casualty and Surety Company of America (the "Surety"), files this its Motion to Strike the affirmative defenses of Defendants, PRCHOU, LLC; Mukadas D. Kurban; Apar Pataer; Abdul R. Dawood; and Maria E. Dawood (collectively, "Indemnitors"), pursuant to Federal Rule of Civil Procedure 12(f).[1]  In support, the Surety respectfully states as follows:

### I.
### SUMMARY

1.      The Surety filed this lawsuit to recover amounts owed to it by the Indemnitors pursuant to contractual promises of indemnity. The Indemnitors assert multiple affirmative defenses that should be stricken pursuant to Rule 12(f) for multiple, mutually exclusive reasons:

- The affirmative defenses are not appropriately pled. As briefed below, the Surety asserts that affirmative defenses are subject to the heightened pleading standards of *Twombly* and *Iqbal*, and in this case, the Indemnitors provide no specificity; rather, they provide only a one-word descriptor of a purported defense. Even if the Court

---

[1] *See* Dkts. 19 and 20

determines that only fair notice is required in line with *Woodfield*, the defenses would still fail under that more lenient standard.

- The defenses revolve around the notion that the Surety should not have resolved the claim against its bond and the Indemnitors do not want to repay the losses suffered. All of those defenses – whatever name or characterization they are given – fail as a matter of law based on the provisions of the indemnity agreement, e.g., the Surety's absolute right to settle claims, the prima facie evidence clause, etc.

- Irrespective of those issues, the defenses fail for other reasons under applicable law. For instance, the Indemnitors have asserted defenses tied to an alleged lack of "good faith," despite the fact that Texas law does not recognize a duty of good faith and fair dealing for sureties.

## II.
### MOTION TO STRIKE – JUDGE'S PROCEDURES

2. Pursuant to Federal Rule of Civil Procedure 12(f), the Surety moves to strike the affirmative defenses of unreasonableness of payment, alleged non-liability under the bonds, lack of good faith and fair dealing, negligence and unreasonable conduct, failure to mitigate damages, fraud, and unclean hands.[2]

3. In addition, and in accordance with Section VII(B) of the Court's Procedures, the suit is currently in the initial pleading stage. The nature of the suit is to enforce promises of indemnity and recover actual damages incurred.

4. The issue to be ruled upon by the Court is whether the affirmative defenses of the Indemnitors should be dismissed as a matter of law. The standard under 12(f) is detailed below.

---

2 *Id.*, ¶¶ 35-41

**MOTION TO STRIKE AFFIRMATIVE DEFENSES**                                            **PAGE 2**

## III.
### BACKGROUND

5.      In connection with the issuance of performance and payment bonds (the "Bonds")

on behalf of PRCHOU, LLC (the "Principal"), the Indemnitors executed a *General Agreement of*

*Indemnity* in favor of the Surety, dated May 9, 2019 (the "Indemnity Agreement").[3]

6.      After execution of the Bonds, the Principal was issued notices of default and/or

terminated by the obligee on the Bonds, the Metropolitan Transit Authority of Harris County

("METRO").[4] In turn, METRO asserted claims against the Bonds based on the failure of the

Principal to complete the bonded projects.[5]

7.      Based on the claims against the Bonds, and in accordance with Section 5 of the

Indemnity Agreement, the Surety demanded collateral of $2,866,884.78 on July 16, 2023.[6] The

Indemnitors did not provide collateral as requested by the Surety, which constituted a default under

the Indemnity Agreement.[7]

8.      Among other provisions, the Indemnity Agreement provides as follows:

**3. <u>Indemnification and Hold Harmless</u>:** Indemnitors shall exonerate, indemnify
and save [the Surety] harmless from and against all Loss. An itemized, sworn
statement by an employee of [the Surety], or other evidence of payment, shall be
prima facie evidence of the propriety, amount and existence of Indemnitors'
liability. Amounts due to [the Surety] shall be payable upon demand.[8]

**4. <u>Claim Settlement</u>:** [The Surety] shall have the right, in its sole discretion, to
determine for itself and Indemnitors whether any claim, demand or suit brought
against [the Surety] or any Indemnitor in connection with or relating to any Bond
shall be paid, compromised, settled, tried, defended or appealed, and its
determination shall be final, binding and conclusive upon the Indemnitors. [The

---

3 *See* Dkt. 15-1

4 Dkt. 15, ¶ 14

5 *Id.* at ¶ 15

6 Dkt. 1-2; *see also* Dkt. 15-1, ¶ 5

7 *See* Dkt. 15, ¶ 18; *see also* Dkt. 15-1, ¶ 1 (definition of default); Dkt. 15-3 (notice of default)

8 Dkt. 15-1, ¶ 3 (emphasis in original)

Surety] shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.[9]

## IV.
### BRIEF IN SUPPORT[10]

**A.    Standard for Striking Defenses Under Rule 12(f)**

*Pleading of Defenses Generally*

9.    Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matters." FED. R. CIV. P. 12(f). The decision to grant a motion to strike is within the Court's discretion. *SEC v. Cuban*, 798 F. Supp. 2d 783, 787 (N.D. Tex. 2011) (Fitzwaer, C.J.). "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 667 F.2d 1045, 1057 (5th Cir. 1982) (citations omitted).

10.    When a Rule 12(f) motion challenges the sufficiency of an affirmative defense, the standard for it and a Rule 12(b)(6) motion to dismiss are "mirror images." *Zytax, Inc. v. Green Plains Renewable Energy, Inc.*, CIV.A.H-09-2582, 2010 WL 2219179 (S.D. Tex. May 28, 2010). Rule 12(b)(6) motions are governed by the heightened pleading standard set forth in the seminal cases of *Bell Atlantic Co. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Twombly*, the U.S. Supreme Court held that in order to withstand a motion to dismiss, a plaintiff must plead sufficient facts in a complaint to allege a plausible entitlement to relief. 550

---

9 *Id.* at ¶ 4 (emphasis in original)

10 The argument section in this Motion is 10 pages. Accordingly, the Motion does not contain all of the items detailed in Section VII(B) of the Court's Procedures, e.g. table of contents, table of authorities, etc. To the extent the Court would like these items to be included, the Surety will certainly comply with an amended filing.

U.S. at 559; *see also Iqbal*, 556 U.S, at 678 (parties must offer more than "naked assertion[s] devoid of further factual enhancement." (internal quotations omitted)

11.     The Fifth Circuit has held that "[a]n affirmative defense is subject to the same pleading requirements as is the complaint." *Woodfield v. Bowman,* 193 F.3d 354, 362 (5th Cir. 1999).  In *Woodfield* – decided before *Twombly* and *Iqbal* – the Fifth Circuit determined that the federal pleading standards required that "a defendant . . . must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Vargas v. HWC Gen. Maint., LLC*, CIV.A. H-11-875, 2012 WL 948892 (S.D. Tex. Mar. 20, 2012) (citing *Woodfield*, 193 F.3d at 362). The Fifth Circuit has not yet had occasion to revisit its decision in *Woodfield* subsequent to the *Twombly* and *Iqbal* decisions. *Id.*

12.     Although the Fifth Circuit has not yet spoken on the applicable standard, Texas courts presented with the issue have extended *Twombly's* heightened pleading standard to affirmative defenses. *United States v. Brink*, CIV.A. C-10-243, 2011 WL 835828 (S.D. Tex. Mar. 4, 2011); *Vargas,* 2012 WL 948892 at *3; *Teirstein v. AGA Med. Corp.*, 6:08CV14, 2009 WL 704138 (E.D. Tex. Mar. 16, 2009) (citing *Twombly*, "Rule 8 . . . requires . . . enough facts to state a claim to relief that is plausible on its face"); *Kleppinger v. Tex. DOT*, No. L-10-124, 2012 U.S. Dist. LEXIS 198322, at *15 (S.D. Tex. 2012) (applied "the plausibility standard articulated in *Twombly* and *Iqbal* in assessing the sufficiency of affirmative defenses."); *Tran v. Thai*, No. H-08-3650, 2010 U.S. Dist. LEXIS 17946, 2010 WL 723633, *1 (S.D. Tex., Mar. 1, 2010) (Rosenthal, J.) (holding that no more stringent pleading standard applies to affirmative defenses than fair notice).[11]

---

[11] Even if the Court declines to extend the pleading standards of *Twombly* and *Iqbal* to affirmative defenses, "baldly naming the broad affirmative defenses . . . falls well short of the minimum particulars needed to identify the affirmative defense in question . . . ." *Woodfield*, 193 F.3d at 362. This is exactly what the Indemnitors have done. For example, and while this defense is invalid for other mutually exclusive reasons, the Indemnitors "baldly" assert negligence as

13.     Accordingly, and on this procedural basis alone, all of the affirmative defenses of the Indemnitors should be stricken, as they do not provide sufficient facts to allege a plausible entitlement to relief, and indeed, do not plead any facts at all. Rather, the Indemnitors simply allege the conclusory applicability of a defense with the hope that if enough is thrown on the wall something might stick (and this is revealed further by the fact that defenses are asserted that have no basis under Texas law, briefed *infra*).

*Heightened Standard for Fraud*

14.     There is a further failure to plead with respect to the affirmative defense of fraud. The Federal Rules of Civil Procedure imposes a heightened pleading standard for claims alleging fraud: a party is required to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Thus, "a party alleging fraud must, at minimum, plead the 'who, what, when, where, and how' of the alleged fraud." *Webb v. Everhome Mortg.*, 704 F. App'x 327 (5th Cir. 2017) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997); *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994)); *see also Abbott v. BP Expl. & Prod.,* 781 F. Supp. 2d 453, 459-60 (S.D. Tex. 2011) ("Rule 9(b) applies by its plain language to all averments of fraud") (internal quotations omitted) (Hoyt, J.); *PCS Software, Inc. v. Dispatch Servs., Inc.*, No. H-23-108, 2024 U.S. Dist. LEXIS 82112, *9 (S.D. Tex. 2024).

15.     Moreover, the Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams*,

---

an affirmative defense, yet provide no facts or other averments that would identify what duty the Surety owed to the Indemnitors, what act or omission constituted a breach of that duty, and the extent to which that act or omission was the cause of any actual damages. This is not fair notice required by the Rules.

112 F.3d at 177); *see also Burback v. Brock,* No. 22-40609, 2023 U.S. App. LEXIS 17845 (5th Cir. 2023) (fraud claims cannot be based on speculation and conclusory allegations).

16.     As noted, the Indemnitors make no attempt to provide any facts that would support their affirmative defenses, and this is more so glaring with respect to the affirmative defense of fraud, as none of the above items required by the Fifth Circuit are met. As a result, and on this basis alone, this defense should be stricken by the Court.

**B.     All Defenses are Invalid Based on the Indemnity Agreement**

17.     Even if the Court determines that the Indemnitors have satisfied the appropriate pleading requirements – whether fair notice or the heightened pleading standards of *Twombly* and *Iqbal* – the defenses should still be stricken pursuant to Rule 12 as none are supported by Texas law. Indeed, the law is overwhelmingly in support of the Surety and its rights as a counterparty to a contractual agreement of indemnity in connection with issuance of performance and payment bonds. All of the affirmative defenses come down to the disagreement by the Indemnitors that the Surety should have settled a claim by METRO against the performance bond and incurred a loss.[12] These flavors of that defense – however creatively pled – fail as a matter of law based on the language of the Indemnity Agreement.[13] The Indemnity Agreement granted the Surety the right to settle claims against its bonds in its sole discretion,[14] and moreover, contained a clause noting the prima facie liability of the Indemnitors for payments made.[15] These clauses are routinely enforced by courts in Texas – for the very reason as presented by this case, as courts do not allow indemnitors to come in and play Monday morning quarterback and question how a surety resolves

---

12 *See* Dkt. 15, ¶¶ 13-24

13 *See* Dkt. 15-1

14 *Id.,* ¶ 4

15 *Id.,* ¶ 3

claims against its bonds. This is more so the case given the prior default of the Indemnitors and their refusal to honor their obligations under the indemnity agreement.[16]

18.     Indemnity agreements are read as any other contract under Texas law. *Associated Indemnity Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276 (Tex. 1998); *Safeco Ins. Co. v. Gaubert*, 829 S.W.2d 274 (Tex. App.—Dallas 1992, writ denied). Where the terms of a contract are clear and unambiguous, such as those in the Indemnity Agreement at issue in this case, its construction is solely a question of law. *Heritage Res., Inc. v. Nationsbank*, 939 S.W.2d 118 (Tex. 1996); *R&P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex. 1980). Texas courts have consistently held that indemnity agreements are valid and enforceable obligations of the principal and indemnitors. *Ford v. Aetna Insurance Co.*, 394 S.W.2d 693, 698 (Tex. Civ. App.—Corpus Christi 1965, writ ref'dn.r.e.); *English v. Century Indemnity Company*, 342 S.W.2d 366, 369 (Tex. Civ. App.—San Antonio 1961, no writ) (indemnity agreements are not against public policy).

19.     The Texarkana Court of Appeals summarized the following principles of Texas indemnity law:

> a.  "When a surety is granted the contractual right to settle a claim without a judicial determination of liability, that right will be enforced as written, and the principal will be bound to reimburse the surety for the amount it has paid in settlement." *CAT Contracting*, 964 S.W.2d at 282-85; *Gaubert*, 829 S.W.2d at 282.

> b.  "Common-law principles such as reasonableness of the settlement and a requirement of potential liability do not apply where the indemnity contract expressly gives the surety the right to settle claims without an adjudication." *CAT Contracting*, 964 S.W.2d at 285 (citing *Ford*, 394 S.W.2d 693).

---

16 *See* Dkt. 15-3

c. "Where the surety is given the unqualified right to settle claims, it is immaterial whether the surety and its principal are legally liable on the bond." *Gaubert*, 829 S.W.2d at 282; *Ford*, 394 S.W.2d at 698.

d. "Moreover, the surety does not owe a common-law duty of good faith and fair dealing to its principal." *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415 (Tex. 1995).

e. "An unambiguous contractual right to indemnification on a settlement is absolute, unless the principal raises and proves an affirmative defense such as fraud." *Gaubert*, 829 S.W.2d at 282; *Ford*, 394 S.W.2d at 698.

*Old Republic Surety Co. v. Palmer*, 5 S.W.3d 357 (Tex. App.—Texarkana 1999, no pet. h.); *see also Cont'l Cas. Co. v. Paredes*, No. 98-CV-1595-G, 2000 U.S. Dist. Lexis 375 at *17 (N.D. Tex. Jan. 7, 2000), *aff'd*, 250 F.3d 743 (5th Cir. 2001).

20. Bearing these principles in mind, the Indemnity Agreement provides a road map for striking the affirmative defenses of the Indemnitors:

a. In paragraph 4, the Indemnitors agreed that the Surety "shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against [the Surety] or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors."

b. Paragraph 3 provides the promise of repayment by the Indemnitors. Moreover, the *prima facie* evidence clause confirms the liability of the Indemnitors and is designed so that sureties may avoid lengthy litigation in enforcing the indemnity promises. *See* Phillip L. Bruner & Patrick J. O'Connor, Jr., BRUNER & O'CONNOR ON CONSTRUCTION LAW, Vol. 3, §10:105 (2002).

c. As an aside, it is worth noting that paragraph 5 required the Indemnitors to provide collateral in connection with any anticipated loss. The Surety requested this collateral and the Indemnitors refused to provide any, which constituted a default under the Indemnity Agreement.

21.     The internal ledger of the Surety attached to its *First Amended Complaint* detailing the losses[17] establishes the fact and the amount of the Indemnitors' liability. *See* 2 ROBERT FRANK CUSHMAN, CONSTRUCTION LAW HANDBOOK §37.08 (1999) ("With a prima facie evidence clause, a surety's indemnity case is suited for summary judgment especially when the surety includes supporting documents, such as affidavits, that help to support the motion."); *e.g.*, *Fid. & Deposit Co. of Maryland v. Tri-Lam Co., Inc.*, No. SA-06-CA-207-XR, 2007 U.S. Dist. LEXIS 35439, *14 (W.D. Tex. May 15, 2007); *see also Ford*, 394 S.W. 2d 693.

22.     Application of the "prima facie" evidence clause is not uncommon. *Gaubert*, 829 S.W.2d at 282-83 ("The indemnity agreement provides that an itemized statement of loss and expense incurred by surety, sworn to by an officer of surety, shall be prima facie evidence of the fact and extent of the liability of [indemnitors] to surety in any claim or suit by surety against [indemnitors]. This provision is enforceable"); *see also United States Fire Ins. Co. v. Rey-Bach*, Inc., No. 3:02-CV-2133-K, 2004 U.S. Dist. LEXIS 16237 (N.D. Tex. 2004); *Merchs. Bonding Co. v. Gandler-Snider Eng'r. Co.*, No. 3:98-CV-0499-BC, 1999 U.S. Dist. LEXIS 11172 (N.D. Tex. 1999); *Parks v. Developers Surety & Indemnity Co.*, 302 S.W.3d 920, 924-25 (Tex. App.—Dallas 2010, no pet.) (internal citations omitted).

23.     Accordingly, all of the affirmative defenses asserted by the Indemnitors fail as a matter of law based on the Surety's right to settle claims. As summarized by Judge Godbey:

> Common-law principles such as reasonableness of the settlement and a requirement of potential liability do not apply where the indemnity contract expressly gives the surety the right to settle claims without an adjudication. **The doctrines of unclean hands, acquiescence, negligence, and failure to act equitably all assume that Travelers owed a duty to the indemnitors to act reasonably, but the Indemnity Agreement expressly allows Travelers to handle claims at its sole discretion**. Similarly, the defense of mitigation does not apply because Travelers

---

17 *See* Dkt. 15-5

was within its rights under the right-to-settle clause to settle or pay claims in full at its discretion, whether or not this it was reasonable to do so.

*Travelers Cas. & Sur. Co. of Am. v. James*, Civil Action No. 3:15-CV-1999-N, 2016 U.S. Dist. LEXIS 195432, *18 (N.D. Tex. 2016) (internal quotations omitted) (emphasis added). These are the exact same sort of defenses asserted by the Indemnitors, which are defeated by the language of the Indemnity Agreement.

**C.    Other Specific Issues Establishing Invalidity of the Defenses**

*Unreasonableness of Payments*

24.    The affirmative defenses revolving around the notion that the payments by the Surety were not reasonable[18] should be struck under Rule 12(f) because the Indemnity Agreement does not provide for a good faith requirement. *See Travelers Cas. & Sur. Co. of Am. v. Momie*, Civil Action No. H-22-2212, 2023 U.S. Dist. LEXIS 233422, *7 (S.D. Tex. 2023) ("a surety need not have conducted a 'reasonable' investigation prior to a determination that claims should be settled or paid."); *Travelers Cas. & Sur. Co. of Am. v. Padron*, No. 5:15-CV-200-DAE, 2019 U.S. Dist. LEXIS 68781, *25 (W.D. Tex. 2019) ("Common-law principles such as reasonableness of the settlement and a requirement of potential liability do not apply where the indemnity contract expressly gives the surety the right to settle claims without adjudication . . . .") (internal quotation omitted). Thus, "the Indemnity Agreement does not contractually limit Travelers' right to reimbursement on its good faith payment or settlement of claims — to the contrary, the Indemnity Agreement expressly gives Travelers sole discretion in its payment or settlement of claims." *James*, Civil Action No. 3:15-CV-1999-N, 2016 U.S. Dist. LEXIS 195432, *17.

---

18 *See* Dkts. 19 and 20, ¶¶ 35, 36, 37, 38, and 41

*Lack of Good Faith and Fair Dealing*

25.     There is no good faith and fair dealing requirement between the Indemnitors and the Surety. The Texas Supreme Court has held that there is no implied duty of good faith and fair dealing on a surety. *See CAT Contracting, Inc.*, 964 S.W.2d at 280 ("We concluded in *Great American* that because these factors are not present in the relationship between surety and obligee, the duty of good faith and fair dealing should not apply.  Because we likewise conclude that they are not present in the relationship between surety and principal, we also decline to extend the duty to this relationship.); *see also Great Am. Ins.*, 908 S.W.2d 415 ("Moreover, the surety does not owe a common-law duty of good faith and fair dealing to its principal."). The defense should thus be struck pursuant to Rule 12(f).

*Failure to Mitigate Damages*

26.     The affirmative defense of failure to mitigate damages fails for three, independent reasons: (1) the *prima facie* clause of the Indemnity Agreement sets the liability of the Indemnitors; (2) the Surety had the right to settle claims against the Bonds (and moreover, the Indemnitors refused to post collateral in connection with any claim); and (3) substantively, the Indemnitors have not alleged any facts to support a defense of a failure to mitigate.

27.     The Indemnitors contractually agreed that "other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability."[19] As such, the internal ledger of the Surety identifying its losses establishes the fact and amount of the liability of the Indemnitors. *See Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 210 (5th Cir. 1996). As also noted, the Indemnitors granted the Surety the right to settle all

---

19 Dkt. 15-1, ¶ 3

claims, including the claim by METRO, which is the claim that is the basis of the allegation of a failure of the Surety to mitigate its damages.[20]

28.     Finally, the affirmative defense of a failure to mitigate requires more than "merely . . . asserting that a plaintiff failed to mitigate damages. Evidence must be developed which clearly shows a plaintiff's failure to mitigate caused further damages, and the evidence must be sufficient to guide the jury in determining which damages were attributable to a plaintiff's failure to mitigate." *Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220, 225 (Tex. App.—San Antonio 1999, no pet.). Thus, "the party asserting failure to mitigate has the burden of proving facts showing lack of such mitigation and must also show the amount by which the damages were increased by failure to mitigate." *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 708 (Tex. App.—Fort Worth 2006, pet. denied) (citing *Lester v. Logan,* 893 S.W.2d 570, 577 (Tex. App.—Corpus Christi 1994), *writ denied per curiam,* 907 S.W.2d 452 (Tex.1995)); *Rauscher Pierce Refsnes, Inc. v. Great S.W. Sav. F.A.,* 923 S.W.2d 112, 117 (Tex. App.—Houston [14th Dist.] 1996, no writ)).

29.     The Indemnitors have not – and cannot – meet this burden when it comes to the affirmative defense of failure to mitigate, and as such, it is proper for the Court to strike this defense pursuant to Rule 12(f).

*Unclean Hands*

30.     Equitable defenses must be pled with the specific elements to establish the defense. *See, e.g., Fluor Corp. v. ILL. Power Co.,* 326 F. 2d 374, 377-378 (7th Cir. 1964); *Software Publishers Ass'n v Scott & Scott, LLP*, 2007 WL 2325585 at *2 (N.D. Tex. 2007) (holding that a defendant's false assertions of estoppel affirmative defense did not provide plaintiff with fair notice of claims being advanced). The unclean hands defense states that the Surety is not entitled to any

---

20 *Id.*

equitable recovery because it has unclean hands.  It does not recite or specify any of the facts that would support such an allegation.

31.     In addition, the unclean hands defense is basically another attempt at arguing that the Surety acted in bad faith, which does not exist in Texas. Moreover, under the doctrine of unclean hands, the Indemnitors must show that they were injured by the Surety's unlawful or inequitable conduct. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App.—Fort Worth 2008, pet. denied). As discussed in the sections above, the common-law principles of reasonableness of payment and good faith do not apply. Without a common-law duty of good faith, the Surety making payments pursuant to the Indemnity Agreement "in its sole discretion . . . and its determination shall be final, binding and conclusive upon the Indemnitors" cannot be unlawful or inequitable conduct as a matter of law.[21]

32.     Accordingly, the Court should strike the unclean hands defense and find that Indemnitors have failed to plead sufficient facts to allege a plausible entitlement to relief.

## IV.
### CONCLUSION

For the foregoing reasons, Travelers Casualty and Surety Company of America requests the court strike all of the affirmative defenses of the Indemnitors.  The Surety prays for such other and further relief, both at law and in equity to which it may be justly entitled.

---

[21] *Id.* at ¶ 4

Respectfully submitted,

**BAINS LAW PLLC**

By: */s/ Brandon K. Bains*
       Brandon K. Bains – Attorney in Charge
       State Bar No. 24050126
       S.D. Texas Bar No. 711977
       P.O. Box 559
       Azle, TX 76098
       Telephone: (214) 494-8097
       brandon@bainslaw.com

       **ATTORNEY FOR TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing has been served pursuant to Federal Rules of Civil Procedure upon the following counsel of record on this the 9th day of August, 2024:

Minh-Tam (Tammy) Tran
**THE TAMMY TRAN LAW FIRM**
4900 Fournace Place, Suite 418
Bellaire, Texas 77401
832-372-4403
ttran@tt-lawfirm.com
*Counsel for PRCHOU, LLC, Mukadas D. Kurban, and Apar Pataer*

D. John Neese, Jr.
Texas Bar No. 24002678
Samuel B. Haren
Texas Bar No. 24059899
**MEADE NEESE & BARR LLP**
2118 Smith Street
Houston, Texas 77002
(713) 355-1200
jneese@mnbllp.com
sharen@mnbllp.com
*Counsel for Abdul R. Dawood and Maria E. Dawood*

       */s/ Brandon K. Bains*
       Brandon K. Bains